UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
ROBERT T. PARTRIDGE, Jr.,            )
            Plaintiff                )
                                     )    CIVIL ACTION
        v.                           )    NO. 09-12171-WGY
                                     )
MICHAEL J. ASTRUE, as he is          )
Commissioner, Social Security        )
Administration,                      )
            Defendant.               )
_____ )

MEMORANDUM OF DECISION

YOUNG, D.J.                                    December 1, 2010

I.  INTRODUCTION

    The plaintiff, Robert T. Partridge, Jr., brings this action pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (the "Commissioner"). Partridge challenges the decision of the Administrative Law Judge (the "hearing officer") denying his application for Supplemental Security Income.[1] He argues that the Commissioner's decision "is

---

[1] Partridge's original complaint also sought reversal or remand of the Commissioner's decision regarding Partridge's application for Disability Insurance Benefits under Title II of the Social Security Act. Pl.'s Compl. 1. The Commissioner filed a motion to dismiss this element of the suit because no hearing on Partridge's Title II claim had taken place, so no final decision of the Commissioner had occurred, and judicial review was therefore unavailable. Comm'r's Mot. Dism. 1-2, ECF No. 17.

1

not based on substantial evidence due to errors of fact and law" and that the Commissioner failed "to apply the appropriate regulatory standard in evaluating plaintiff's claim for disability benefits." Pl.'s Mot. Reverse Decision Comm'r or Remand 1, ECF No. 12. Partridge requests that this Court reverse the decision of the Commissioner or, in the alternative, remand the case to the Commissioner. Pl.'s Memo. Vacate Comm'r's Final Decision 17, ECF No. 13 ("Partridge Memo."). The Commissioner filed a motion for an order confirming his decision. Comm'r's Mot. Order Affirming Decision Pl.'s Disability Claim, ECF No. 15.

### A. Procedural Posture

Partridge filed for Social Security Disability Insurance Benefits and Supplemental Security Income on April 13, 2006, alleging an onset of disability on December 31, 1989. Admin. R. 82-92. On September 27, 2006, the Commissioner denied both of Partridge's claims. Id. at 51-56. Upon request for reconsideration, Partridge's application was reevaluated and again denied on March 2, 2007. Id. at 57-63. Partridge requested an oral hearing on April 27, 2007, id. at 64, and such hearing took place before hearing officer Stephen C. Fulton on March 4, 2008, id. at 12. The hearing officer dismissed

---

Partridge subsequently amended his complaint to remove the claim based on the denial of Title II benefits and proceed solely with his challenge to the Commissioner's denial of his claim for Supplemental Security Income. Pl.'s Mot. Am. Compl. 1-2, ECF No. 22.

Partridge's Disability Insurance Benefits claim because Partridge had previously applied for those benefits, that application had been denied, Partridge had not requested a hearing within sixty days of that denial, and he provided no reason sufficient to warrant reopening that administratively final determination. Id. at 13. The hearing officer considered and denied Partridge's Supplemental Security Income claim on June 13, 2008, because (1) the severity of symptoms and degree of restriction alleged were not credible, (2) there exists in the national economy a significant number of jobs Partridge could perform, and (3) Partridge had not established disability as defined in the Social Security Act. Id. at 17-21.

Partridge requested that the Social Security Appeals Council review the hearing officer's decision. Id. at 4-7. The Appeals Council denied Partridge's request for review on October 26, 2009, making the hearing officer's decision the final decision of the Commissioner. Id. at 1-3. On December 22, 2009, Partridge filed the present action with this Court to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g). See Compl. 1, ECF No. 1.

**B.  Factual Background**

Partridge was born on December 9, 1964. Admin. R. 82. He has a high school education and was last employed briefly as a painter's helper in 1992. Id. at 29-30, 94, 100. The hearing

officer determined that Partridge had no work that qualified as "past relevant work."  Id. at 20.

Partridge was voluntarily admitted and hospitalized for about one month in 1984 after having an altercation with police while intoxicated and then losing consciousness.  Id. at 240, 242.  He was diagnosed with episodic alcohol abuse and borderline personality.  Id. at 241.  He was again admitted to Medfield State Hospital in 1985 after making superficial cuts on his wrists.  Id. at 247.  It was recommended that he pursue outpatient treatment.  Id. at 251.  During both hospitalizations, psycho-social assessments noted that Partridge had issues dealing with anger and depression.  Id. at 244, 251.  Partridge was diagnosed with bipolar disorder at approximately this time.  Id. at 30, 34.

Partridge has been intermittently incarcerated for drug violations, driving under the influence, weapons charges, and disorderly conduct.  Id. at 304.  Partridge reports that he regularly saw Dr. Raymond Colella ("Dr. Colella") of Nova Psychiatric Services for treatment of his bipolar disorder during the 1990's and 2000's.  Id. at 35.  Most of the treatment records from Partridge's time with Dr. Colella were reportedly lost in a flood of the facility's basement.  Id. at 356.  The only extant records from Nova cover the periods from approximately February 2004 to January 2006.  These records show that Partridge was

prescribed Lithium, Trazadone, and Seroquel. Id. at 146. The records mostly describe drug-related issues and describe Patridge's mood as "stable." Id. at 147-48. They note that Partridge was depressed but reported mood swings only "once in a blue moon." Id. at 358.

While incarcerated in 2005, Partridge was treated in the Health Services Office of the Norfolk County Sheriff's Office. Id. at 162. The treating psychologist and nurse noted at the time that Partridge's bipolar disorder was stable on his medications. Id. From 2005 to 2007, Partridge attended group therapy sessions for substance abuse at Bay State Community Services. See id. at 254-310. Notes from these therapy sessions indicate that Partridge was stable and calm and participated in the sessions. Id.

On September 11, 2006, Peter Hurd, Ed.D. ("Dr. Hurd") examined Partridge. Id. at 183-85. Dr. Hurd noted that Partridge was "alert" and "oriented to person, place, and time," and that "[h]is attitude was cooperative." Id. at 184. Partridge had "full judgment and insight" and average intelligence. Id. Dr. Hurd also described Partridge as "easily distracted" with negativistic thought content and a reportedly depressed mood. Id. The examination report notes that Partridge "has a history of having many psychotic features and delusions, particularly when he was off medication." Id.

5

Two state agency doctors reviewed Partridge's medical records and submitted Psychiatric Review Technique Forms and Mental Residual Functional Capacity Assessments. Dr. Michael Maliszewski ("Dr. Maliszewski") noted Partridge's diagnoses of bipolar disorder and antisocial personality disorder and concluded that he suffered moderate impairments in social functioning and concentration, persistence, and pace, and mild impairment in activities of daily living. Id. at 196, 202. Dr. Maliszewski opined that Partridge was capable of performing simple concrete tasks in a structured work setting. Id. at 202. Dr. John Burke ("Dr. Burke") similarly concluded that Partridge suffered no more than moderate limitations and was capable of carrying out "simple tasks of understanding and remembering of instructions" and was capable of working "in a low stress situation." Id. at 218-20. Dr. Colella also submitted a Residual Functional Capacity Assessment, stating that Partridge was moderately limited in the ability to understand and remember detailed instructions, but markedly limited in his ability to carry out such instructions, concentrate for extended periods, work in coordination with others, interact appropriately with the public, and get along with coworkers. Id. at 222-24.

Partridge reported that he suffered memory loss and difficulties interacting with other people that made it challenging for him to obtain employment. Id. at 113. Before

6

the hearing officer, he testified that he had "fought every boss I've ever had." Id. at 36. He also stated that he had difficulty accepting criticism, and that he was prone to conflicts with individuals he encountered. Id. at 37-38. Partridge further testified that he had consistent trouble sleeping and would sometimes go periods of several days without any sleep. Id. at 39-40.

At the hearing, a vocational expert responded to two hypotheticals. First, the hearing officer asked the vocational expert to consider a hypothetical individual of Partridge's age, education, and past relevant work experience who could perform work without any exertional, postural, or environmental limitations, and who could understand and remember simple instructions, could concentrate for two hour periods over an eight-hour day, could interact appropriately with coworkers and supervisors, and could adapt to simple changes in the work setting. Id. at 41-42. Based on this hypothetical, the vocational expert testified that such an individual could perform work as a table worker, hand collator, or hand packager. Id. at 42. Second, the hearing officer asked the vocational expert to consider the same hypothetical individual except that he also had a marked limitation in his ability to interact appropriately with coworkers or supervisors. Id. The vocational expert testified that this hypothetical individual would not be able to perform

7

any jobs as "those limitations would make it very difficult for him to maintain any kind of employment." Id. at 43.

## II. LEGAL STANDARD

### A. Standard of Review

Under 42 U.S.C. § 405(g), a district court has the power to affirm, modify, or reverse a decision of the Commissioner. The district court must make its decision based on the pleadings and transcript of the record before the Commissioner; "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g); see Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). The First Circuit has clarified this standard as requiring a court to uphold the Commissioner's findings if "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriquez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). As it is the role of the Commissioner to draw factual inferences, make credibility determinations, and resolve conflicts in the evidence, the Court must not perform such tasks in reviewing the record. Id. Complainants face a difficult battle in challenging the Commissioner's determination because,

under the substantial evidence standard, the Court must uphold the Commissioner's determination, "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).

**B.   Social Security Disability Standard**

An individual is considered disabled if he is "[unable] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration promulgated a five-step sequential analysis to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520. The hearing officer must determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or medically equals an impairment listed under 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant has the residual functional capacity to perform his past relevant work; and (5) whether the impairment prevents the claimant from doing any other work considering the claimant's age, education, and work experience. Id.

The claimant bears the burden in the first four steps to show that he is disabled within the meaning of the Act. Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 7 (1st Cir. 1982).  Once the claimant has established that he is unable to return to his former employment, the burden shifts to the Commissioner to prove the fifth step, that the claimant is able to engage in substantial gainful activity that exists in significant numbers in the national economy.  Id.

**III. THE HEARING OFFICER'S DECISION**

Applying the five step analysis, at the first step, the hearing officer found that Partridge had not engaged in substantial gainful activity since April 13, 2006.  Admin. R. 15. At the second step, based on the medical history, testimony at the hearing, and expert opinions, the hearing officer found that Partridge's bipolar disorder constituted a severe impairment during the relevant time period.  Id.  At the third step, the hearing officer found that this impairment, however, did not meet or medically equal any of the listed impairments in Appendix 1 of Subpart P of Part 404.  Id. at 16.  At the fourth step, the hearing officer held that Partridge retained the residual functional capacity to perform a full range of work at all exertional levels but with the limitations that he could understand and remember simple instructions, concentrate for two

hour periods over an eight hour day, and interact appropriately with coworkers and supervisors.  Id. at 17.  At the fifth step, based on this residual functional capacity, the hearing officer found that Partridge could perform work that exists in significant amounts in the national economy, including jobs such as hand packager, hand collator, and table worker.  Id. at 20.  The hearing officer concluded that Partridge had not been disabled since April 13, 2006, the date he filed his claim.  Id. at 21.

**IV. ANALYSIS**

Partridge disputes the hearing officer's findings on the fourth and fifth steps of the disability analysis: the determination of Partridge's residual functional capacity and the conclusion that jobs existed in significant numbers in the national economy that Partridge could perform given his limitations.

A. **Residual Functional Capacity**

Partridge contests the hearing officer's determination of his residual functional capacity, arguing that the hearing officer did not give proper weight to Dr. Colella's opinion regarding the severity of Partridge's impairments.  See Partridge Memo. 13.  Partridge claims that because Dr. Colella was a treating psychiatrist, his opinion should have been giving

11

controlling weight, or that, at the least, the hearing officer should have given it significant deference.

It is the Commissioner's obligation to resolve evidentiary conflicts and a district court ought not do over those determinations. Irlanda Ortiz, 955 F.2d at 769. To evaluate a medical opinion, the Commissioner considers factors such as the nature, length, and extent of the treatment relationship; frequency of examination; supportability and consistency with other evidence in record; and specialization of the physician. 20 C.F.R. § 404.1527(d). The hearing officer generally lends "more weight to opinions from [the claimant's] treating [physicians], since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)." Id. § 404.1527(d)(2). The hearing officer is bound to give "controlling weight" to the opinions of treating physicians only if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record." Id. § 404.1527(d)(2). The hearing officer "is **not** required automatically to give controlling weight to **any** 'treating' doctor's report." Rivera v. Sec'y of Health & Human Servs., No. 92-1986, 1993 WL 40850, at *3 (1st Cir. Feb. 19, 1993). A hearing officer "may reject a treating physician's opinion as

controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors." Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002) (Ponsor, J.); see also C.F.R. § 404.1527(d)(4). If a hearing officer decides not to give controlling weight to the opinion of a treating physician, he must "give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion." 20 C.F.R. § 404.1527(d)(2).

Here, the hearing officer considered, and ultimately rejected the opinion submitted by Dr. Colella:

> The claimant testified that Dr. Colella has treated him for 6 or 7 years, but his treatment notes are not found in the evidence of record. Even assuming Dr. Colella is a treating source, his opinion is unsupported by the objective medical evidence of record. The only therapy notes included in the record indicate that the claimant has been able to maintain sobriety with few references to unstable moods related to bipolar disorder. There is no description of marked impairments anywhere in the treatment record. Accordingly, Dr. Colella's opinion is granted little weight since it is unsupported by objective data and inconsistent with the treatment record as a whole.

Admin. R. 19. The hearing officer further concluded that the opinion of Dr. Hurd was entitled to more weight since that opinion was based on Dr. Hurd's examination of Partridge and was consistent with the opinions of the state agency doctors and the available medical evidence. Id.

Based on the evidence of record, the hearing officer's decision not to give controlling weight to Dr. Colella's opinion

13

was proper.  The only records of Dr. Colella's treatment of Partridge covered the period from February 2004 to January 2006, entirely before the period relevant to this claim for benefits, which commenced in April 2006.  Even these treatment records do not contain objective medical evidence that would support Dr. Colella's opinion that Partridge suffered marked social impairments.  Moreover, Dr. Colella's opinion was inconsistent with the objective medical evidence that did exist, including the group therapy notes from 2005 to 2007; with the examination conducted by Dr. Hurd; and with the opinions of the state agency doctors.  In fact, the only objective medical evidence that potentially supported the level of impairment opined by Dr. Colella was contained in hospitalization records from 1984 and 1985.  See id. at 240-53.

The record as a whole supports the hearing officer's decision to give more weight to the opinions of Drs. Hurd, Maliszewski, and Burke than to the opinion of Dr. Colella.  The opinions accepted by the hearing officer support his conclusion that Partridge did not suffer marked social difficulties.  Accordingly, the hearing officer's determination, as part of his finding of Partridge's residual functioning capacity, that Partridge "could interact appropriately with coworkers and supervisors" was supported by substantial evidence and must be affirmed.  Id. at 19.

**B.   Vocational Expert Hypothetical**

Partridge also argues that the hearing officer erred in the fifth step of the disability analysis when he determined that, given Partridge's residual functional capacity, jobs existed in significant numbers in the national economy that Partridge could perform. He argues that the hearing officer's determination was based on an erroneous hypothetical posed to the vocational expert.

The hearing officer asked the vocational expert to consider two hypothetical individuals. Both included Partridge's limitations. The first included no limitations regarding interactions with coworkers while the second included marked social limitations in the workplace. See id. 41-43. In response to the first hypothetical, the vocational expert stated that such an individual would be able to work as a hand collator, hand packager, or table worker. Id. at 42. In response to the second hypothetical, the vocational expert opined that such an individual would not be able to obtain employment. Id. at 43.

In his decision, the hearing officer relied on the first hypothetical and concluded that Partridge would be able to perform work that existed in significant numbers in the national economy. Id. at 20. Partridge argues that the hearing officer improperly relied on the first hypothetical and should have

15

instead relied on the second hypothetical and concluded that jobs did not exist in the national economy that were suitable for Partridge.  See Partridge Memo. 8-13.

The hearing officer's reliance on the first hypothetical was proper because it corresponded to his determination of Partridge's residual functional capacity, which was supported by substantial evidence, as discussed above.  Because the hearing officer properly concluded that the objective medical evidence of record did not support a finding that Partridge suffered from marked social impairments, he was correct to rely on the vocational expert's response to a hypothetical that did not include such social impairments.  The vocational expert's opinion qualifies as substantial evidence to support the hearing officer's decision at the fifth step of the disability analysis.  See Espada Rosado v. Comm'r of Soc. Sec., 25 Fed. App'x 5, 6 (1st Cir. 2001) (per curiam).  Accordingly, the hearing officer's determination that Partridge could perform jobs that existed in significant numbers in the national economy was supported by substantial evidence and must be affirmed.

## V.  CONCLUSION

For all the reasons stated above, this Court DENIES Partridge's motion to reverse or remand, ECF No. 12, and GRANTS the Commissioner's motion for an order affirming the decision of

the hearing officer, ECF No. 15.  Judgment shall enter for the Commissioner.

    SO ORDERED.

                                 /s/ William G. Young  
                                  WILLIAM G. YOUNG  
                                  DISTRICT JUDGE